IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIDGET KAY CUNNINGHAM,

        Plaintiff,

vs.                              Case No. 09-2535-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. Plaintiff filed her initial brief on August 2, 2010 (Doc. 10). On October 15, 2010, the defendant filed a motion to reverse and remand the case for further hearing (Doc. 15-16). Plaintiff filed a response in opposition to the motion on October 29, 2010 (Doc. 17). Defendant filed a reply brief on November 3, 2010 (Doc. 18).

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by

1

substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or

3

she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 15, 2009, administrative law judge (ALJ) Robert A. Evans issued his decision (R. at 12-23). Plaintiff alleges that she has been disabled since March 11, 2006 (R. at 12). Plaintiff

is insured for disability insurance benefits through December 31, 2007 (R. at 15). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since March 11, 2006, the alleged onset date of disability (R. at 15). At step two, the ALJ found that plaintiff had the following severe impairments: rheumatoid arthritis, generalized osteoarthritis, moderate right carpal tunnel syndrome and mild C6 radiculopathy (R. at 15). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15). After determining plaintiff's RFC (R. at 15), the ALJ found at step four that plaintiff is able to perform past relevant work (R. at 22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22-23).

**III. Should this case be reversed and remanded for further hearing, or reversed for an award of benefits?**

The only issue before the court is whether this case should be remanded for further hearing, or for an award of benefits. When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits. When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate

5

award of benefits. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion. Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993). A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits. Harris, 821 F.2d at 545. Thus, relevant factors to consider are the length of time the matter has been pending, and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits. Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006). The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

Defendant seeks a reversal of the decision of the Commissioner, and a remand of this case for further hearing for the following reasons:

> The ALJ gave no weight to the physical medical source statement by treating source Hannah Maxfield, M.D. (Tr. 19). Dr. Maxfield opined that Plaintiff would be unable to complete an 8-hour workday, needed to lie down or elevate her legs to waist level or

> higher at unscheduled times during the day, and would be unable to perform work on a regular and continuous basis (Tr. 806-09). The ALJ gave no weight to Dr. Maxfield's mental medical source statement in which she opined that Plaintiff would have problems with dealing with the public, coworkers, and supervisors; maintaining attention/concentration; and understanding, remembering, and carrying out complex job instructions (Tr. 21, 810-12).
>
> Likewise, the ALJ gave no weight to a physical medical source statement completed by treating source Pooja Baijal, M.D. (Tr. 17-18, 392-95). The ALJ also gave no weight to the opinion of consulting examiner Cedric B. Fortune, M.D., who opined that Plaintiff had significant problems (Tr. 18, 466-70). The ALJ gave "greater" weight to the November 30, 2006 opinion of a State agency employee (Tr. 17, 20, 366-73). However, this opinion writer was a Single Decision Maker (SDM), not a medical source.
>
> The ALJ will be asked to reevaluate the medical opinions, discussing the factors set out in 20 C.F.R. §§ 404.1527 and 416.927, Social Security Ruling (SSR) 96-20, and <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003), and to indicate the weight given to each one. After reevaluating the medical evidence and opinions, the ALJ will be directed to make a new RFC finding in accordance with SSR 96-8p and a new decision.

(Doc. 16 at 2).

The first factor to consider is the length of time that this matter has been pending. Plaintiff filed her application for benefits on August 25, 2006. Thus, her case has been pending for four years. This is the first time that plaintiff has sought judicial review.

7

The second factor for the court to consider is whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely serve to delay the receipt of benefits. The court should determine if substantial and uncontradicted evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits.

In this case, the ALJ relied on two non-examining medical sources and a consultative mental status examination in making his RFC findings, while giving little or no weight to the opinions of a number of treating and examining medical sources. The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given

8

particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

The ALJ gave greater weight to the opinion of a physical RFC assessment dated November 30, 2006, and signed by Tara Frey, a "SDM" (R. at 20, 366-373). "SDM" stands for a "Single Decision Maker." An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources. Herrman v. Astrue, Case No. 09-1297-SAC (D. Kan. Sept. 29, 2010).

On the one hand, this assessment was reviewed by Dr. Siemsen, who affirmed the assessment as written (R. at 473). Although the ALJ did not mention this fact in his decision, it should be considered by the ALJ when determining the weight to be given to this assessment. On the other hand, the ALJ should also

consider the fact that this assessment, although it contained some narrative discussion (R. at 373), did not give specific reasons for the functional limitations assessed. The ALJ must give a legally sufficient explanation for rejecting the opinions of treating physicians in favor of the opinions of a non-examining medical consultant. Daniell v. Astrue, 2010 WL 2588174 at *5 (10th Cir. June 29, 2010).

The record also contains a consultative examination by Dr. Fortune, who indicated that plaintiff has significant problems. He stated the following:

> Based on today's exam, I do think she has significant problems. I think she could sit reasonable periods, but I would expect her to have LBP [low back pain], knee, ankle and foot pain with prolonged standing and walking. I think lifting would be a problem because of her back pain. Other than light lifting would be a problem because of her back pain. I think she would have trouble with above shoulder activities because of her shoulders and neck stiffness. I think she would have trouble with prolonged gripping and pinching. I do think she can handle coins, doorknobs, and buttons. Hearing, speaking and traveling are not affected.

(R. at 470). Defendant concedes that the ALJ should reevaluate his earlier determination that the opinions of Dr. Fortune are entitled to no weight. However, even if the ALJ were to give greater weight to the opinions of Dr. Fortune, it is not clear from the record that including limitations set forth by Dr. Fortune would result in a finding that plaintiff is disabled.

Dr. Baijal, plaintiff's treating physician, also offered a physical RFC assessment. He indicated that plaintiff could stand and/or walk for less than 2 hours in an 8 hour workday, but did not indicate the precise nature of this limitation (R. at 392). Dr. Baijal further indicated that plaintiff had no limitation in sitting. He stated that plaintiff's ability to push/pull with upper and lower extremities was affected by the impairment, but again failed to indicate the nature and degree of this limitation (R. at 393).

The ALJ erroneously stated that an "unknown provider" filled out this assessment and gave it no weight (R. at 19). However, defendant concedes that Dr. Baijal filled out the assessment. Therefore, this assessment must be considered in light of a number of factors, including the length, nature and extent of the treatment relationship, <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), which the ALJ could not have done since he did not know who filled out the assessment. The ALJ should also give serious consideration to recontacting Dr. Baijal in order to ascertain how much less than 2 hours of an 8 hour workday can plaintiff stand and/or walk, and to determine the nature and degree of plaintiff's limitation in pushing and/or pulling with her upper and lower extremities. 20 C.F.R. § 404.1512(e). That additional information could help determine whether or not plaintiff is disabled.

Dr. Maxfield, another treating physician, also provided a physical RFC assessment. Although the ALJ gave it no weight (R. at 19), defendant concedes that this opinion should be reevaluated. Dr. Maxfield opined that plaintiff could not work an 8 hour workday (R. at 809), noting that plaintiff could only sit for 4 hours, stand for 1 hour and walk for 1 hour in an 8 hour workday (R. at 808). However, Dr. Baijal opined that plaintiff had no limitations in the ability to sit. The ALJ, in light of all the evidence, should determine which of these opinions should be entitled to more weight, since that determination could clearly factor into whether or not plaintiff is able to work.

Dr. Maxfield offered a number of other opinions, including an opinion that plaintiff can never engage in fine manipulation with her right hand (R. at 807), must lie down or keep her legs elevated to waist-level or higher during the workday, and suffers from pain, fatigue or reduced stamina which would significantly reduce the ability to function in the workplace (R. at 809). The ALJ rejected these opinions, stating that they were not supported by the evidence. Before rejecting these opinions, the ALJ would be well advised to recontact Dr. Maxfield regarding these opinions. In Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004), the court stated that if the ALJ concluded that the treatment provider failed to provide sufficient support for his

13

conclusions about plaintiff's limitations, the severity of those limitations, the effect of those limitations on her ability to work, or the effect of prescribed medication on her ability to work, the ALJ should have recontacted the treatment provider for clarification of his opinion before rejecting it. 366 F.3d at 1084. In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

1996 WL 374183 at *6.

Finally, the court is concerned with the fact that the ALJ considered the physical assessments by Dr. Maxfield, Dr. Baijal, treatment providers, and Dr. Fortune, a consultative examiner, in isolation. An ALJ must not consider the opinions of treating and examining sources in isolation, but those opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other treating and examining sources. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other treating and examining sources, and the need for the ALJ to take

14

this into consideration.  See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

Dr. Maxfield also prepared a mental RFC assessment, which found that plaintiff was frequently limited in the ability to relate to co-workers, interact with supervisors, maintain attention/concentration, and understand, remember and carry out complex job instructions.  He further opined that plaintiff was constantly limited in the ability to deal with the public and deal with work stress.  Dr. Maxfield also found that plaintiff had no limitation in the ability to maintain personal appearance, was seldom limited in the ability to demonstrate reliability, follow work rules, use of judgment, and understand, remember and carry out simple job instructions, and was occasionally limited in the ability to behave in an emotionally stable manner and relate predictably in social situations (R. at 811-812).  The ALJ gave no weight to the opinions of Dr. Maxfield, instead giving greater weight to the opinion of a consultative examiner, Dr. Wallingford (R. at 21).  Dr. Wallingford opined that plaintiff has the ability to work, has the ability to know what is needed to complete a complex task, is able to concentrate, is persistent, and is able to maintain a good pace.  She noted that plaintiff is able to get along with people and managed staff in six stores in the past (R. at 363).

The ALJ gave no weight to the mental assessment by Dr.

Maxfield, stating that it was not supported by any objective findings or clinical evidence (R. at 21). For the reasons set forth above, the ALJ should give serious consideration to recontacting Dr. Maxfield regarding the basis for her opinions before rejecting them. The court would also note that even if greater weight was given to the opinions of Dr. Maxfield regarding plaintiff's mental limitations, it is not clear from the record that those limitations would result in a finding that plaintiff was disabled.[1]

In summary, the only medical evidence that clearly would result in a finding that plaintiff is disabled is the physical RFC assessment by Dr. Maxfield (R. at 806-809). However, it differs in some respects from the other medical opinion evidence regarding plaintiff's physical limitations, including the opinions of Dr. Baijal (R. at 392-395), another treatment provider. It is unclear from the record if the limitations set

---

[1]At the hearing, plaintiff's counsel asked the vocational expert (VE) if plaintiff would be able to work if plaintiff had the limitations contained in Dr. Maxfield's physical RFC assessment. The VE indicated that a person with those limitations could not work (R. at 51-52). The VE was not specifically asked about the impact of the limitations contained in Dr. Maxfield's mental RFC assessment. The VE did testify that a person who could maintain attention and concentration for at least 2 hours could work, but he also indicated that a person unable to maintain attention, concentration, persistence, or pace for anything close to two hours would result in an inability to work; Dr. Maxfield opined that plaintiff's ability to maintain attention or concentration was frequently (i.e., 2/3 of the time) limited  (R. at 50).

forth by Dr. Baijal would result in a finding that plaintiff is disabled. Other physical and mental RFC assessments indicate that plaintiff is not disabled (i.e.: (1) state agency physical RFC assessment by an SDM and Dr. Siemsen (R. at 366-373, 473), (2) PRTF by Dr. Warrender (R. at 375, 385), and (3) the consultative examination by Dr. Wallingford (R. at 361-364). Furthermore, it is unclear from the record of the impact of the limitations set forth in: (1) Dr. Fortune's consultative examination and report (R. at 466-470), and (2) Dr. Maxfield's mental RFC assessment (R. at 810-812) on plaintiff's ability to work. Finally, as noted above, there does appear to be a clear need to recontact plaintiff's treating physicians pursuant to 20 C.F.R. § 404.1512(e) and SSR 96-5p in order to ascertain the basis for their opinions.

On these facts, the court finds that a remand for additional fact-finding would serve a useful purpose. The court cannot say that substantial and uncontradicted evidence in the record as a whole indicates that the plaintiff is disabled and entitled to benefits. When this case is remanded, the ALJ shall reevaluate all the medical evidence as set forth in the motion to remand and in accordance with the directions set forth in this memorandum and order. The ALJ shall consider and address other issues raised by plaintiff in their brief, including the ALJ's finding that certain impairments were not severe impairments and the

impact of plaintiff's obesity (Doc. 10 at 24, 29-30).  After the ALJ has reevaluated all the medical evidence, the ALJ shall make new findings at step two, step four and/or at step five, and make new RFC and credibility findings.

IT IS THEREFORE ORDERED that the motion to remand (Doc. 15-16) is granted.  The decision of the Commissioner is reversed, and the case is remanded (sentence four remand) for further hearing in accordance with this memorandum and order.

Dated this 16th day of November, 2010, Topeka, Kansas.

s/ Sam A. Crow
U.S. District Senior Judge